Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Carrico, S.J.

COMMONWEALTH OF VIRGINIA

                                       OPINION BY
v.  Record No. 030942          SENIOR JUSTICE HARRY L. CARRICO
                                      March 5, 2004

JAMES SYLVESTER JONES

            FROM THE COURT OF APPEALS OF VIRGINIA

     The question for decision in this appeal is whether the
Court of Appeals erred in holding that the doctrine of
inevitable discovery was inapplicable to support the trial
court's refusal to suppress evidence seized in a search
purportedly lacking in probable cause.  Finding the Court of
Appeals' holding erroneous, we will reverse.

     The question stems from indictments charging James
Sylvester Jones (Jones) with attempted possession of cocaine
and possession of a firearm after having been convicted of a
felony.  In a bench trial, the court found Jones guilty of
both offenses and sentenced him to serve a total of eight
years in the penitentiary, with five and one-half years
suspended.

     In an unpublished opinion, the Court of Appeals affirmed
the weapons conviction but reversed the cocaine conviction.

We granted the Commonwealth an appeal from the reversal of the cocaine conviction.[1]

The evidence shows that about 10:30 p.m. on July 23, 2000, Officer Brian O'Donnell of the Charlottesville Police Department and two fellow officers were on patrol in response to numerous complaints of drug sales occurring at a residence located at 321 Sixth Street, S.W., in Charlottesville. The officers approached the residence through the backyards of other homes and observed a group of men standing on the sidewalk in front of the residence.

When the officers came into view, the men ran. Officer O'Donnell flashed his light on Jones and saw that he had a gun in his right hand. O'Donnell yelled "[g]un" and ordered Jones to "[g]et on the ground." O'Donnell then wrestled Jones to the ground and heard Jones' gun hit the pavement "right beside [a] minivan." O'Donnell called to one of his fellow officers to "[g]et the gun, he put it under the van." O'Donnell placed Jones under investigative detention, handcuffed him, and began to search him. While O'Donnell was conducting the search, the other officer recovered Jones' gun, a revolver that appeared to be in operating condition.

---

[1] In a separate petition, Jones appealed the Court of Appeals affirmance of his weapons conviction, but this Court refused his petition. (Record No. 031019, Sept. 9, 2003.)

2

In the search, O'Donnell found in Jones' right rear pants pocket a "knotted plastic bag containing nine off-white, rock-like substances."  At that point, O'Donnell arrested Jones for possession of drugs and transported him to the police station.  There, after Jones had been advised of his Miranda[2] rights, he said that the rocks were cocaine worth approximately $120.00 and that he mixed the cocaine with marijuana.[3]

Upon arrival at the police station but before interviewing Jones, Officer O'Donnell ran "a criminal history" on Jones, which, O'Donnell testified, he "would do in the normal ordinary course of business when [he finds] somebody in the possession of a firearm."[4]  Jones' criminal history disclosed he had been found guilty as a juvenile of an offense that would be a felony if committed by an adult.  He was then charged with the firearms offense.

In considering Jones' motion to suppress, the trial court stated that Officer O'Donnell's detention of Jones was reasonable as a valid pat-down stop under Terry[5] but that O'Donnell did not have probable cause to search Jones.  Yet,

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).
[3] Upon analysis, the rocks were determined to be aspirin.
[4] Officer O'Donnell testified he did not conduct a record check with respect to the firearm at the time of arrest because he "was going to bring [Jones] to the police department and [he] didn't have time to check."
[5] Terry v. Ohio, 392 U.S. 1 (1968).

the court continued, the discovery of the drugs would have been inevitable and, on this basis, the court denied Jones' motion to dismiss.

Jones concedes that his "initial detention was valid based on the officer observing him running away from the area with a firearm in hand," and the Commonwealth does not question the trial court's ruling that Officer O'Donnell did not have probable cause to search Jones. Jones argues that once the trial court found the search was without probable cause, it should have excluded the evidence concerning the drugs and held the doctrine of inevitable discovery inapplicable. The Commonwealth argues the trial court properly held that the doctrine was applicable.

Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule. Weeks v. United States, 232 U.S. 383 (1914); Hart v. Commonwealth, 221 Va. 283, 287, 269 S.E.2d 806, 809 (1980). However, not all illegally obtained evidence is subject to suppression. Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

One of the exceptions to the exclusionary rule is the doctrine of inevitable discovery. This Court recognized the exception in Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974), and Keeter v. Commonwealth, 222 Va.

4

134, 140 n.2, 278 S.E.2d 841, 845 n.2, cert. denied, 454 U.S. 1053 (1981). Later, the Supreme Court of the United States recognized the exception in Nix v. Williams, 467 U.S. 431 (1984), the Court holding that evidence obtained by unlawful means is nonetheless admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Id. at 444.

In reversing the trial court on the ground that the doctrine of inevitable discovery was inapplicable in Jones' case, the Court of Appeals cited its earlier decision in Walls v. Commonwealth, 2 Va. App. 639, 656, 347 S.E.2d 175, 185 (1986). In turn, Walls cited and embraced United States v. Cherry, 759 F.2d 1196 (5th Cir. 1985), cert. denied, 479 U.S. 1056 (1987). In Cherry, the Fifth Circuit recognized the inevitable discovery rule enunciated by the Supreme Court in Nix but said the Supreme Court had failed to state what must be shown to establish that the discovery of evidence in a particular case is inevitable. 759 F.2d at 1204. Filling this purported void and only citing one of its own decisions, United States v. Brookins, 614 F.2d 1037, 1042 n.2 (5th Cir. 1980), the Fifth Circuit held that the prosecution must show:

> (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the

5

time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation.

Cherry, 759 F.2d at 1204; see also United States v. Hernandez-Cano, 808 F.2d 779, 784 (11th Cir.), cert. denied, 482 U.S. 918 (1987).

The Court of Appeals found that the Commonwealth failed to satisfy items (2) and (3) of the Cherry test, and Jones cites this same failure on appeal. With respect to item (2), the Court of Appeals said "[t]here was no specific complaint concerning Jones, so there were no leads for the police to follow prior to the police misconduct." While neither Cherry nor Walls specifies what is necessary to satisfy item (2), nothing in the Supreme Court's opinion in Nix or our opinions in Warlick and Keeter suggests that, to be sufficient, a lead must relate to the specific offense with which the suspect is ultimately charged.

Here, Officer O'Donnell had a lead sufficient to satisfy item (2). After observing Jones fleeing the scene with a gun in hand, Officer O'Donnell, "pursuant to normal police practices," United States v. Seals, 987 F.2d 1102,1108 (5th Cir. 1993), would have run "a criminal history" and discovered Jones' prior adjudication of guilt for an offense equivalent to a felony, would have arrested Jones for the weapons offense, and then would have found the drugs on Jones' person

6

as a result of a search incident to arrest or pursuant to normal booking procedures.

With respect to item (3) of the Cherry test, the Court of Appeals held the item was not satisfied because Officer O'Donnell "was not actively pursuing any alternative line of investigation."  The Commonwealth urges us to reject item (3) because the test it creates is "unnecessarily rigid."  Jones responds that the test is not unnecessarily rigid and that we should reject the Commonwealth's proposal.

Again, we find nothing in the Supreme Court's opinion in Nix or our opinions in Warlick and Keeter requiring a showing that the police were actively pursuing an alternative line of investigation.  And the precedential value of Cherry, upon which the Court of Appeals relied in Walls, is now suspect.  Without mentioning its decision in Cherry or the requirement of an alternative line of investigation, the Fifth Circuit in United States v. Seals, supra, applied the inevitable discovery rule to uphold the challenged seizure of a vehicle following a search without a warrant.  The court stated that police procedures required an inventory of impounded vehicles, and the questioned evidence would have been inevitably discovered "during the normal inventory procedures" of the police department.  Id. at 1108.

Other federal circuits have disapproved the requirement for an alternative line of investigation. United States v. Silvestri, 787 F.2d 736, 745-46 (1st Cir. 1986); United States v. Thomas, 955 F.2d 207, 210 (4th Cir. 1992); United States v. Kennedy, 61 F.3d 494, 499-500 (6th Cir. 1995); United States v. Ramirez-Sandoval, 872 F.2d 1392, 1399 (9th Cir. 1989).

The Court of Appeals opined in Walls that the requirement for an alternative line of investigation is necessary to ensure "that the inevitable discovery exception will be applied consistently with the overall purpose of the exclusionary rule, which is to deter police misconduct." 2 Va. App. at 656, 347 S.E.2d at 185. The court also said that a " 'contrary result would cause the inevitable discovery exception to swallow the [exclusionary] rule by allowing evidence otherwise tainted to be admitted merely because the police could have chosen to act differently and obtain the evidence by legal means.' " Id. (quoting Cherry, 759 F.2d at 1205).

However, as noted in Nix, while the prosecution should not be put "in a better position than it would have been in if no illegality had transpired," 467 U.S. at 443, neither should the prosecution be "put in a worse position simply because of some earlier police error or misconduct" when the evidence would inevitably have been discovered. Id. The requirement

8

for an alternative discovery line of investigation would tip the scales against the prosecution and put it in a worse position than it would have been in had no illegality transpired.  And, if the requirement is allowed to stand, rather than having the exception swallow the rule, the requirement would swallow the exception.  Eliminating the requirement would level the playing field.

It is clear, at least "by a preponderance of the evidence," Nix, 467 U.S. at 444, that the drugs "ultimately and inevitably would have been discovered by lawful means." Id.  The trial court did not err, therefore, in admitting the evidence related to drugs under the doctrine of inevitable discovery.  Accordingly, we will reverse the judgment of the Court of Appeals, reinstate the judgment of conviction, and enter final judgment in favor of the Commonwealth.

Reversed and final judgment.