# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

 v.

Robert E. Poole

December 12, 2006

Case No. 06-166

BY JUDGE EDWARD L. HOGSHIRE

In this criminal case, the defendant, Robert E. Poole, has filed a Motion to Suppress drug paraphernalia that was seized by police during a search of his person. The motion was heard *ore tenus*, argued by counsel, with each side submitting legal memoranda. The Commonwealth has requested that the Court re-open the evidence in the case to permit a supplemental filing. Finding the request untimely and based on insufficient grounds, the request is denied. The Court, having considered the evidence and arguments of counsel, for the reasons set forth below, denies the defendant's Motion to Suppress.

*Statement of Facts*

Several hours before dawn on February 26, 2006, Charlottesville police officer T. R. McNerney received information that a male individual in the vicinity of the East Market coal tower was lost, blind, cold, and in need of assistance. Hearing Transcript ("H.T.") at 6. After combing the area for approximately twenty minutes, Officer McNerney heard a "whistling noise" and discovered Mr. Poole down an embankment, lying a mere thirty or thirty-five feet from the railroad

tracks. H.T. at 23. Mr. Poole had lost his glasses, was disoriented, and had no memory of how he had arrived at his present state. H.T. at 9. He complained of being intoxicated and cold. H.T. at 9-10.

Officer McNerney retrieved the defendant's glasses, which were lying next to the defendant, and, with the help of another officer who had subsequently arrived, assisted a staggering Mr. Poole to the top of the embankment. H.T. at 18; H.T. at 10. After attempting to contact a substance abuse clinic, Officer McNerney placed Mr. Poole under arrest for being drunk in public. H.T. at 11. Officer McNerney was unaware that the property surrounding the coal tower was privately owned. *Id.*

Prior to transporting Mr. Poole in the police car, Officer McNerney initiated a search of the defendant's person, pursuant to standard police policy. H.T. at 21. Before Officer McNerney began the search, he asked the defendant whether he had "any objects that were going to stick" the officer. H.T. at 28. Mr. Poole then admitted that he had drug paraphernalia in his pockets. H.T. at 28, 29. In response, Officer McNerney reached into Mr. Poole's pockets and retrieved a plastic bag and glass tube, which were later found to contain marijuana and cocaine residue, respectively. H.T. at 29.

## Legal Standard

### A. *Search Incident to Arrest/Inevitable Discovery*

The exclusionary rule bars the introduction of evidence obtained either during or as a direct result of an unlawful search. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). The policies underlying the exclusionary rule are to deter lawless conduct by police officers and to prevent the courts from being accomplices in violations of the Constitution. *Id.* at 386.

Though well-settled, the exclusionary rule is not absolute. The United States Supreme Court has recognized exceptions to the exclusionary rule when the tainted evidence has been corroborated by an independent source; when the search was the result of a harmless error; and, most relevantly here, when the evidence would inevitably have been discovered in a lawful manner. *Nix v. Williams*, 467 U.S. 431, 443, 444 (1984).

The Supreme Court of Virginia has recognized the "inevitable discovery" exception since 1974. *See Warlick v. Commonwealth*, 215 Va. 263, 266 (1974). The Virginia Supreme Court has hewed closely to *Nix*, holding that the prosecution must show "that the drugs 'ultimately and inevitably would have been discovered by lawful means'." *Commonwealth v. Jones*, 267 Va. 532, 538 (2003) (*citing Nix*, 467 U.S. at 444). Finally, Virginia's highest

court has specifically rejected a requirement that the police be actively following other leads, preferring to develop the doctrine on a case-by-case basis. *Jones*, 267 Va. at 537.

In the case at bar, the officers had determined that Mr. Poole required medical and/or substance abuse intervention and would need to be transported in a police vehicle. He was arrested for being drunk in public once the police observed his condition, arguably without probable cause given the location of the property in question. Before placing anyone, especially someone in Mr. Poole's condition, in the back of a police car, the police are required for their own safety to insure that the person being transported has no weapons. Standard policy dictated the inquiry regarding weapons be made to anyone in Poole's situation. Poole responded to the inquiry with an admission that he had drug paraphernalia in his pockets. This statement gave the police clear probable cause for the limited search to retrieve the drug paraphernalia. Given the timing of the events here, however, the real issue becomes whether the search was incident to an arrest or to standard police practice before allowing persons in Poole's condition to enter a police cruiser.

## B. *The Community Caretaker Doctrine*

In addition to their role as enforcers of the law, police officers also have a role as "community caretakers." Police have "duties to the public, such as rendering aid to individuals in danger of physical harm . . . and providing services on an emergency basis." *Reynolds v. Commonwealth*, 9 Va. App. 430, 436 (1990) (citation omitted). Evidence from warrantless searches may be admissible when an officer is acting as a community caretaker, provided that the search is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 436-37 (1973).

To be a valid search under the "community caretaker" doctrine, (1) the officer's initial contact or investigation must be reasonable; (2) the intrusion must be limited; and (3) the officer must not be investigating criminal conduct under the pretext of exercising his community caretaker function. *See Commonwealth v. Waters*, 20 Va. App. 285, 291 (1995). Though the "community caretaker" doctrine has traditionally been applied largely to traffic stops, it is not limited to them. *Id.*

*Application*

Even if Officer McNerney lacked probable cause to arrest Mr. Poole, the defendant was plainly intoxicated and seeking help from the police. Mr. Poole was half-blind, disoriented, intoxicated, and in close proximity to railroad tracks; consequently, there can be little dispute that Officer McNerney was "rendering aid to individuals in danger of physical harm" when he approached Mr. Poole and assisted the defendant up the embankment. Furthermore, to prevent the defendant from continuing to be a danger to himself, Officer McNerney undertook the transportation of Mr. Poole in the police car. Thus, even had Officer McNerney not arrested Mr. Poole, and had merely driven him to the hospital or to a substance abuse clinic, Mr. Poole would have been subject to a limited search pursuant to standard police procedure. Under the facts presented here, this search, which the Court finds not to have been a pretext for investigation, would have inevitably yielded the contraband found on Mr. Poole; thus, although the search followed the arrest, it was, under these unique facts, not truly a product of the arrest.

Had Officer McNerney not arrested Mr. Poole, he nonetheless would have ultimately and inevitably discovered the drugs by lawful means; specifically, he would have discovered the drugs as incident to a search while transporting the defendant. Accordingly, the defendant's motion is denied.