COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Frank and Millette
Argued at Alexandria, Virginia


CHARLES W. HELEM

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2305-06-4                      JUDGE ROBERT P. FRANK
                                                           MAY 27, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

      Mark J. Petrovich (Laura E. Byrum; Petrovich & Walsh, PLC, on
      briefs), for appellant.

      Eugene Murphy, Senior Assistant Attorney General (Robert F.
      McDonnell, Attorney General, on brief), for appellee.


        Charles W. Helem, appellant, was convicted by a jury of first-degree murder, in violation

of Code § 18.2-32.  Appellant contends that the trial court erred in denying his motion to

suppress the key to the victim's home that was recovered from appellant's key ring, as he argues

that police illegally seized his key ring in violation of his rights under the Fourth Amendment.

Appellant further asserts that the subsequent examination of the keys on his key ring was an

additional illegal search.  For the following reasons, we find that the trial court did not err in

denying appellant's motion to suppress, and we affirm his conviction.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On April 6, 2002, the victim was found murdered inside her home. There was no sign of any forced entry into the victim's home.

Appellant was the victim's ex-boyfriend, and had lived with the victim in her home for "a couple of months" during that relationship, which ended sometime in early 2002. The victim's family told police officers investigating the victim's death that appellant had a key to the victim's home. The victim's family also related that, before the victim's death, appellant had been asked to return his key to her home, and had returned a key several days later. The officers believed that appellant may still have had a key to the victim's home after the relationship had ended.

Detective John Wallace, with the Fairfax County Police Department's Homicide Squad, interviewed appellant on April 6, 2002, at the apartment he shared with his new girlfriend. Detective Wallace asked appellant to meet him at the police station to answer some questions. Appellant's girlfriend drove appellant, in her vehicle, to the police station, following behind Detective Wallace in his vehicle.

Appellant's girlfriend parked next to Detective Wallace's vehicle in the parking lot of the police station. Appellant exited the vehicle, and began to walk away. Detective Wallace saw appellant turn around "suddenly," open the passenger side door, and "put his keys inside the car." Appellant then proceeded into the police station.

Detective Wallace interviewed appellant. Initially, appellant answered the detective's questions and was somewhat cooperative. Detective Wallace then asked appellant if he had a key to the victim's home. Appellant responded that he did not. Detective Wallace asked

_____

[1] Because appellant contests only the trial court's decision denying his motion to suppress, we recite only those facts that are pertinent to the motion to suppress.

appellant if he could "inspect his keys," and appellant stated that he did not have his keys with him. Detective Wallace told appellant that he had seen him put his keys in his girlfriend's car. Appellant said that the keys in his girlfriend's car were his car keys.

Detective Wallace testified that appellant became "evasive and angered – or upset" when he began questioning him about his keys. Detective Wallace advised appellant that the victim's family had questioned whether appellant still had a key to the victim's home and that Detective Wallace wanted to be able to assure the family that appellant did not have such a key. Appellant told Detective Wallace he would have to get a search warrant to inspect the keys.

At that time, Detective Wallace left the interview room and asked Detective David W. Allen, also with the Fairfax County Police Department, to obtain consent from appellant's girlfriend to retrieve appellant's keys from her vehicle. Detective Wallace gave Detective Allen a key known to fit the lock on the victim's front door to compare with the keys on appellant's key ring.

When Detective Wallace returned to the interview room, appellant stated that he wanted to terminate the interview. Detective Wallace accompanied appellant outside of the police station and walked with him to his girlfriend's car.

Meanwhile, Detective Allen approached appellant's girlfriend, who was waiting in the lobby of the police station.[2] Detective Allen asked appellant's girlfriend if he could look at the keys that were in her car, and "[s]he said sure." Appellant's girlfriend walked out to the parking lot, followed by Detective Allen, and appellant's girlfriend opened the passenger front door. She "grabbed a set of keys that were on the floor of the car and handed them to [Detective Allen]."

---

[2] Detective Allen testified that he had interviewed appellant's girlfriend as well and that she was waiting in the lobby for appellant to finish his interview.

Detective Allen then looked at the keys "to see if there was a key that was consistent in size and shape to the key that Detective Wallace had given [him]."

Detective Allen was comparing the various keys on appellant's key ring to the key known to fit the victim's front door when appellant and Detective Wallace approached. As Detective Allen held up a particular key on the ring for comparison, appellant stated, "That's my mom's house key." Detective Allen determined the key to be a match to the known house key, and removed the matching key from appellant's key ring. Detective Allen returned the rest of the keys to appellant, and gave the matching key to Detective Wallace. Appellant and his girlfriend then left the police station.

On September 16, 2002, the grand jury returned an indictment charging appellant with first-degree murder.

Appellant filed a motion to suppress the key ring recovered from his girlfriend's vehicle, arguing that his "keys were unlawfully seized within the meaning of the Fourth Amendment." Appellant contended that the seizure was unlawful because (1) officers did not have a warrant, (2) appellant did not consent to the seizure of the keys, (3) there were no exigent circumstances to justify seizing the keys without a warrant, and (4) appellant's girlfriend did not have control over the keys or the right to consent to the seizure. Appellant also argued that the keys were not in plain view, that their incriminating character was not immediately apparent, and that the police lacked the probable cause to believe that the keys were "associate[d]" with "criminal activity."

A hearing on the motion to suppress was held on May 30, 2003. On June 12, 2003, the trial court issued a letter opinion denying appellant's motion to suppress.

This appeal follows.

- 4 -

## ANALYSIS

### Standard of Review

"On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

On appeal, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003) (quoting Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002)). "While 'the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure,' [] the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error." Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003) (quoting Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989)).

### Seizure of the Key Ring

Appellant contends that the trial court erred in denying his motion to suppress the key to the victim's home that was recovered from his key ring. Appellant asserts that police illegally seized the key ring from his girlfriend's car, without a warrant and without his consent. Thus, he

argues, Detective Allen's seizure of his key ring was in violation of appellant's rights under the Fourth Amendment. [3]

Assuming without deciding that the police violated appellant's Fourth Amendment rights by seizing appellant's keys without his consent and without a search warrant, we find that the trial court did not err in denying appellant's motion to suppress, as the evidence was admissible under the inevitable discovery doctrine.

The inevitable discovery exception to the exclusionary rule permits admission of challenged evidence if the Commonwealth proves by a preponderance that the evidence "'ultimately or inevitably would have been discovered by lawful means'" in spite of the illegal conduct. Commonwealth v. Jones, 267 Va. 532, 536, 593 S.E.2d 204, 206 (2004) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). In order to have evidence admitted under the inevitable discovery exception, the Commonwealth must show "(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct" and "(2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct." Id. at 536, 593 S.E.2d at 207.

Here, when appellant told Detective Wallace to get a warrant if Detective Wallace wanted to examine appellant's keys, Detective Wallace said he "would get a search warrant" if necessary. The record establishes that Detective Wallace in fact had sufficient information at that time to provide probable cause to obtain a warrant to examine appellant's keys. See, e.g., Texas v. Brown, 460 U.S. 730, 742 (1983) (holding probable cause "requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain

---

[3] On brief, appellant argued that his girlfriend was acting solely as an agent for the government when she retrieved the keys from her vehicle. There is some inconsistency in the record with regard to whether appellant took this same position before the trial court. However, whether or not appellant made this argument below, we need not consider it based on our holding in this case.

items may be . . . useful as evidence of a crime" (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

Detective Wallace knew that at about 9:00 a.m. on April 6, 2002, appellant's former girlfriend had been found murdered inside her residence and that there were no signs of forced entry. Detective Wallace also knew that the caller ID unit in the victim's home showed the last incoming call to the victim's residence prior to her murder was received at 10:01 p.m. on April 5, 2002, from the residence of appellant's new girlfriend, where appellant resided. The victim's family reported that appellant, who had lived with the victim for a period of time, had a key to her residence and that, when the victim had asked appellant to return the key, he delayed doing so. Detective Wallace testified that, as a result, he was concerned that appellant might have had a duplicate key made before he returned the original. Appellant admitted knowing, prior to his contact with Detective Wallace on the evening of April 6, 2002, that the victim had been killed.

Additionally, when appellant came to the police station for a voluntary interview the day the victim was murdered, Detective Wallace observed appellant exit his girlfriend's car, walk towards the police station, and then suddenly stop and return briefly to his girlfriend's car to place his keys inside. During that interview, appellant admitted that he had lived with the victim up to four months prior to her death, that he had had sexual intercourse with her at least as late as one month before her murder, and that he had spoken to her on the phone within days of her murder. Appellant stated that he had a key to her residence, but said he had given it back several weeks before her murder. Appellant was "semi-cooperative" during the interview, until Detective Wallace asked if he could examine appellant's keys. Appellant became "angry" and "upset" and said he did not have his keys with him. When Detective Wallace said he had seen appellant put some keys in his girlfriend's car immediately prior to the interview, appellant said Detective Wallace would have to obtain a warrant if he wanted to examine the keys.

This information was more than sufficient to provide Detective Wallace with probable cause to believe that appellant still retained a key to the victim's residence and that the key was on the key ring appellant left in his girlfriend's vehicle. As a result, Detective Wallace had sufficient information to obtain a search warrant in order to examine the keys appellant left in his girlfriend's vehicle. Thus, we find that the Commonwealth has shown "'a reasonable probability that the evidence in question would have been discovered by lawful means'" and that "'the leads making the discovery inevitable were possessed by the police at the time of the misconduct.'" Jones, 267 Va. at 536, 593 S.E.2d at 206 (quoting United States v. Cherry, 759 F.2d 1196, 1204 (5th Cir. 1985)). We hold that, as a result, the evidence "'ultimately or inevitably would have been discovered by lawful means'" in spite of the illegal conduct by police. Id. (quoting Nix, 467 U.S. at 444).

For these reasons, we hold that the trial court did not err in denying appellant's motion to suppress the key to the victim's residence recovered from appellant's key ring, as the doctrine of inevitable discovery applies to render the key to the victim's residence admissible. We, therefore, affirm the judgment of the trial court.

Affirmed.