COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia

BRENTON DEMOUN JONES

MEMORANDUM OPINION[*] BY
v.      Record No. 1465-14-3       JUDGE RUDOLPH BUMGARDNER, III
NOVEMBER 17, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Mark T. Williams (Williams, Morrison, Light & Moreau, on brief),
for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Brenton Jones appeals his convictions for possession of cocaine and of marijuana. He

contends the trial court erred in holding that drugs found on his person were admissible under the

inevitable discovery doctrine. Concluding that the doctrine did apply, we affirm.

In reviewing a trial court's denial of a motion to suppress, "we determine whether the

accused has met his burden to show that the trial court's ruling, when the evidence is viewed in

the light most favorable to the Commonwealth, was reversible error." Roberts v.

Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009) (citing Murphy v.

Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)). Although we will "defer to the

trial court's factual findings unless plainly wrong or without evidence to support them," we will

"review the ultimate question of law, the application of the inevitable discovery doctrine, *de

novo*." Copeland v. Commonwealth, 42 Va. App. 424, 437, 592 S.E.2d 391, 397 (2004).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Officer A.D. Harn and other officers were on patrol at a motel when they detected the smell of marijuana coming from a particular room. An officer knocked on the door, and an unidentified person opened the door. The smell of marijuana became stronger, the officers asked all the occupants to step outside, and they did. Officer Harn asked defendant his name and if he was carrying any marijuana. He also asked for permission to search the defendant. The defendant told the officer his name. He did not verbally consent to the search, but raised his hands, turned, and put his hands against a wall. The officer interpreted those actions to be consent and searched the defendant finding a bag of marijuana and a bag of cocaine on him. After the search, Officer Harn learned there was an outstanding capias for the defendant. He testified that it was standard procedure to check for outstanding warrants when a person is detained.

The encounter with the defendant was recorded on camera, and the trial court viewed the recording. It found the detention was proper but the defendant did not consent to the search. However, the trial court further ruled that the evidence obtained from the defendant was admissible under the inevitable discovery doctrine. It found the evidence would have been inevitably discovered when the police routinely checked for warrants. They would have arrested defendant on the outstanding capias and would have discovered the drugs when they lawfully searched him pursuant to that arrest.

Even though the police may have illegally seized evidence, the suppression remedy should not be applied when that evidence would inevitably have been discovered. Nix v. Williams, 467 U.S. 431, 444 (1984). The inevitable discovery doctrine applies if the Commonwealth shows "(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct" and "(2) that the leads making

the discovery inevitable were possessed by the police at the time of the misconduct." Commonwealth v. Jones, 267 Va. 532, 536, 593 S.E.2d 204, 207 (2004).

Defendant does not contest his initial detention but maintains that the Commonwealth failed to demonstrate that it would have inevitably discovered the evidence. He argues, "[i]t is mere speculation that the capias would have been discovered after the fact," because the police only obtained his name before the search. They did not gather any other identifying information needed to conduct the warrant check until after they completed the search.

The evidence proved there was an outstanding warrant for defendant's arrest. The defendant told the police his name while lawfully detained. Harn testified that it was standard procedure to conduct a record check and the check could be conducted at any point during the encounter. The videotape showed that the officers asked the other motel room occupants for identifying information. One officer can be heard asking the other officers if they had collected any names or identifications yet, showing that the police were in the process of checking the suspects' records.

In Jones, the Supreme Court found that where the facts demonstrated the police, pursuant to normal procedure, would have run a criminal history check and thus discover the suspect was subject to arrest, the contraband was admissible under the inevitable discovery doctrine. Id. at 537, 593 S.E.2d at 207. Similarly in this case, Harn, in the regular course of his investigation, would have discovered the outstanding capias for defendant's arrest and inevitably would have discovered the contraband. It was not speculation that Harn would run a background check. He testified that background checks were a part of normal police procedure, and the recording showed they were actually being conducted.

We conclude the trial court properly denied the motion to suppress.  Accordingly, we affirm.

Affirmed.

Humphreys, J., dissenting in the judgment.

I write separately because, in my view, the case at bar involves "speculative elements" that Nix v. Williams, 476 U.S. 431 (1984), and its progeny instructs courts to avoid and because it is factually distinguishable from our Supreme Court's decision in Commonwealth v. Jones, 267 Va. 532, 593 S.E.2d 204 (2004).

In Nix, the record was clear that the police would have obtained incriminating evidence *even if* no misconduct had taken place. Thus, the Supreme Court concluded, "while the independent source exception would not justify admission of evidence in [such a] case, its rationale is wholly consistent with and justifies our adoption of the ultimate or inevitable discovery exception to the exclusionary rule." Nix, 467 U.S. at 444. Thus, "[t]he inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably *would* have been discovered." Murray v. United States, 487 U.S. 533, 539 (1988) (second emphasis added). The core rationale for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct is that such course is needed to deter police from violations of constitutional and statutory protections notwithstanding the high social cost of letting obviously guilty persons go unpunished. Nix, 467 U.S. at 442-43. Significantly, "inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." Id. at 444 n.5.

Under the inevitable discovery doctrine, it is not sufficient to allege that the evidence *could* have been found in a lawful fashion if some hypothetical events had occurred; it must be shown by a preponderance of the evidence that the evidence inevitably *would* have been

- 5 -

discovered by lawful means. See id. at 444 ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably *would* have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received. (emphasis added)). In navigating the difference between what *would* have been discovered by other lawful means and what *could* have been discovered, many courts have looked to the existence of routine police procedures as a compelling fact in applying the inevitable discovery doctrine, reasoning that the existence and routine application of such procedures allows courts to minimize speculation and focus on facts more capable of ready verification. See e.g. United States v. Andrade, 784 F.2d 1431, 1433 (9th Cir. 1986); United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993); United States v. Seals, 987 F.2d 1102, 1107-08 (5th Cir. 1993); United States v. Allen, 159 F.3d 832, 841 (4th Cir. 1998); United States v. Garcia, 496 F.3d 495, 506 (6th Cir. 2007).

The Supreme Court of Virginia reviewed the consideration of standard police procedures in the inevitable discovery context in Jones. In that case, the police officer testified that absent the illegal search, he *would* have run a criminal history check on the appellant pursuant to standard procedure, explaining such check was something he "would do in the normal ordinary course of business when [he finds] somebody in the possession of a firearm." Jones, 267 Va. at 535, 593 S.E.2d at 206. The Court held that had it not been for the illegal search the officer *would* have run a criminal history check, pursuant to normal police practices, and discovered the firearm offense, which would have inevitably led to the discovery of the contraband in a search incident to arrest. Id. at 537, 593 S.E.2d at 207.

In my view, the key component missing from this case that was present in Jones and the various federal appellate court cases applying the inevitable discovery doctrine to situations involving the existence of standard procedures, is any evidence whatsoever that Officer Harn

actually intended to follow the routine procedure. On the contrary, Officer Harn testified only to what the standard procedure for running a record check was, but did not offer any evidence that he had any intention of following such procedure. During direct examination, Officer Harn testified to the following facts:

> Q. Okay. Now, at some point, did you come to learn that there was an outstanding capias for Mr. Jones?
> A. I did.
> Q. And how did you learn that?
> A. By running his name and date of birth, and he told me, he had one
> Q. Okay, at what point did he tell you?
> A. Ah, shortly after I got his name and date of birth.
> Q. Is it standard procedure to run a name and date of birth, when someone is detained?
> A. Yes.
> Q. Okay. At what point do you normally do that?
> A. Ah, it all depends on the situation. Most of the time, we do it when we first come in contact with the people, but sometimes it happens at any point during our contact with them.

There is no evidence in this record that these procedures would actually have been followed in this case but for the illegal search and the discovery of contraband on Jones's person. In fact, Officer Harn did not run the record check until after the illegal search had taken place and Jones had been placed under arrest. Accordingly, I take issue with the statement in the majority opinion that "[i]t was not speculation that Harn would run a background check." Although Officer Harn testified that background checks were a part of normal police procedure, and the video recording showed that such checks were actually being conducted by other officers, it is the sheerest speculation that Officer Harn would have followed their example. He certainly did not testify that he would have done so. Indeed, it is equally speculative and reasonable to conclude that Officer Harn would have continued his violation of those "standard" procedures in contrast to the proper example set by his fellow officers.

I would hold that merely establishing the existence of a standard police procedure, without more, is insufficient to justify the application of the inevitable discovery exception to the exclusionary rule. To extend the doctrine of inevitable discovery to such a situation would extend the doctrine well beyond what the Supreme Court established in <u>Nix</u>. Such application of the inevitable discovery doctrine, if followed to its logical conclusion, would essentially provide a free pass to the police to violate a defendant's rights with no risk of having the evidence excluded, so long as an arrest was ultimately made and a record check was performed during the booking process. Because there is no evidence in the record that Officer Harn intended at any point to actually follow the standard procedure of conducting a record check on an individual who was detained, I would further hold that this case involves such "speculative elements" that <u>Nix</u> and its progeny require us to avoid, and thus conclude that the circuit court erred in applying the inevitable discovery doctrine to this case. Accordingly, I would reverse the judgement of the circuit court in suppressing the evidence and remand this case to the circuit court for a new trial if the Commonwealth is so advised.