UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Causey and Callins
Argued at Norfolk, Virginia


JAMIE JAMAR HEYWARD

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1409-22-1              JUDGE DORIS HENDERSON CAUSEY
                                                    MARCH 5, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley,[1] Judge

> Thomas H. Sheppard, II (Sheppard & O'Brien, P.C., on brief), for
> appellant.
>
> Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
> Miyares, Attorney General, on brief), for appellee.


Jamie Jamar Heyward entered a conditional guilty plea to two counts of possession with

intent to distribute a Schedule I or II controlled substance and possession of a firearm while

possessing a Schedule I or II controlled substance with the intent to distribute. On appeal, he argues

that the circuit court erred in denying his suppression motions and as a result, his convictions must

be reversed and vacated. He argues that the search was conducted under a warrant invalid under

*Franks v. Delaware*, 438 U.S. 154 (1978). Heyward's argument turns on his assertion that the

warrant was tainted by the police omission of the fact that the police made two warrantless entries

into Heyward's apartment. For the reasons below, although we hold that the two warrantless entries

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Lilley heard Heyward's suppression and *Franks* motions. Judge Stephen C.
Mahan heard and accepted Heyward's conditional guilty plea.

were unlawful, we uphold the validity of the warrant under *Franks*. Thus, we affirm the denial of Heyward's suppression motions and Heyward's convictions.

BACKGROUND[2]

In June 2020, Matthew Lasley and Mike Mullins were conducting fire extinguisher inspections at the apartment complex where Heyward lived. Lasley was the agent for the property manager, and Mullins was the fire inspector. After knocking, announcing their presence, and receiving no answer, Lasley concluded that no one was home. He and Mullins entered Heyward's apartment. Lasley saw "stacks of American currency" stacked about ten to twelve inches high, Ziploc bags, and what he believed to be marijuana on a table inside. He also saw bagged marijuana next to the kitchen doorway. Lasley saw "more money strewn out" on another table in a different room, as well as on the TV stand. He saw "more stacks of money" in the bedroom and an "automated money-counting machine" on the nightstand. Mullins used his cell phone to take pictures of his and Lasley's observations. To their surprise, Heyward, appearing to have just stepped out of the shower, came out of the bathroom and walked toward Lasley and Mullins. After Lasley and Mullins briefly spoke with Heyward, they exited the apartment.

Once outside, Lasley called the police and told them what he and Mullins had seen inside the apartment. Lasley saw Heyward exit his apartment with a bag in his hands and drive away in a car. When police arrived, Lasley reported what he saw inside Heyward's apartment and that they saw Heyward leave. When Officer Staie arrived, he spoke with Lasley and Mullins, who

---

[2] "In reviewing a [circuit] court's ruling on a suppression motion, we consider the evidence in the 'light most favorable to . . . the prevailing party below,' the Commonwealth in this instance, and the factual findings of the trial judge will be disturbed only if plainly wrong." *Williams v. Commonwealth*, 26 Va. App. 612, 614 (1998) (quoting *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991)). "Our consideration of the record includes evidence adduced at both the trial and the suppression hearing, if any." *Id.*

were standing "right outside" of Heyward's apartment. Staie explained that he "received a call for service [in] reference" to a "property manager" and fire inspector reporting that, while inspecting a unit, they had "seen a large sum of money on the table along with a large quantity of marijuana." Staie "confirmed what [Lasely and Mullins] had said to dispatch" and "got their side of what they saw." Lasley and Mullins then unlocked Heyward's apartment to let Staie inside so "[he] could confirm what they had seen" and "preserve the crime scene." Staie did not have a search warrant for Heyward's apartment. Staie saw "plastic baggies" containing what he believed to be marijuana. Staie then called Detective Shafer and "advised [Shafer] what [Lasley and Mullins] relayed to [Staie] and what [Staie] had seen and smelled . . . inside the apartment."

Shafer arrived at the scene, and Lasley let Shafer into Heyward's apartment. Shafer did not have a search warrant for Heyward's apartment. While inside, Shafer saw baggies of marijuana and smelled an odor of marijuana. Shafer stated that his purpose in entering the apartment "[w]as to make sure nobody was in there, to make sure there was no evidence being destroyed." After exiting the apartment, Shafer then spoke with Lasley and Mullins about their observations. Shafer then called "a phone number . . . [at which] Heyward said he could be reached" and spoke with Heyward on the phone. Heyward stated he was smoking marijuana when Lasley and Mullins came to inspect his apartment.

Lasley was at the scene from the time he let Staie into the apartment until the time Shafer arrived. During that entire time, he saw no one go into Heyward's apartment, did not hear anybody—other than police—inside the apartment, or see any indication that anyone was inside the apartment. Before entering the apartment, both Staie and Shafer knew that Heyward had left the apartment. Both said that they didn't see any indications that someone was inside the apartment or hear anything from inside the apartment. Shafer obtained a search warrant for Heyward's apartment. The police executed the warrant and seized "a kilo press," 43,260 U.S.

- 3 -

dollars, substances suspected to be cocaine, suspected fentanyl, suspected marijuana, three firearms, a bulletproof vest, two money counters, packaging equipment, and narcotic paraphernalia.

Heyward moved to suppress all evidence seized from his apartment. The circuit court held that the warrantless entries were unlawful but that the exigent circumstances exception to the warrant requirement applied. The circuit court then issued an order "tak[ing] the matter under advisement for further consideration and reflection" and allowing both parties to brief the issue. The circuit court specifically asked for briefing on the exigent circumstances exception and inevitable discovery doctrine. After considering the parties' briefs, the circuit court ruled that the exigent circumstances doctrine did not apply but that the inevitable discovery doctrine did and thus denied Heyward's suppression motion. Heyward filed a second motion to suppress under *Franks v. Delaware*, claiming that the warrant was invalid because police omitted from the warrant affidavit the fact that they made two warrantless entries into the apartment. The circuit court held a hearing on the motion. At the hearing, the parties argued whether the warrantless entries tainted information in the affidavit, causing the circuit court to comment that the hearing had gone "beyond" the initial stages of a *Franks* challenge to the merits of a *Franks* challenge. The circuit court then denied Heyward's second suppression motion.

Heyward now appeals the denial of both suppression motions.

ANALYSIS

Standard of Review

"The defendant has the burden of showing that . . . denying the motion to suppress was reversible error. We review de novo the [circuit] court's application of the law to the particular facts of the case." *Branham v. Commonwealth*, 283 Va. 273, 279 (2012).

Heyward argues that the evidence in his apartment, seized under a search warrant, must be suppressed as fruit of the poisonous tree. He argues that this evidence must be suppressed because under *Franks*, the warrant was invalid, tainted by reckless omission of the fact that Staie and Shafer made warrantless entries into Heyward's apartment. Heyward also argues that, aside from *Franks*, certain information in the warrant affidavit was tainted by Shafer's warrantless entry and thus should be stricken from the warrant. Without such information, he argues, the warrant does not establish probable cause and any evidence seized under the warrant must be suppressed. The Commonwealth argues that the warrant was not tainted by the officers' warrantless entries because such entries were permitted under the protective sweep exception to the warrant requirement.

Overview

First, we consider whether Staie's and Shafer's warrantless entries were permitted under the protective sweep exception. We hold that they were not because Staie and Shafer did not have reasonable suspicion that Heyward's apartment harbored a person who could harm police. Because the police's warrantless entries did not fall under an exception to the warrant requirement, we next consider whether these warrantless entries affected the validity of the warrant. We hold that Heyward has not made the preliminary showing necessary for a *Franks* hearing because he has not presented any evidence of a design to deceive the magistrate or reckless disregard for the truth in the police's omission of information necessary to a finding of probable cause. Thus, we hold that the circuit court did not err in denying Heyward's suppression motions and uphold his convictions.

<u>Warrantless Entries</u>

The Commonwealth argues that both Staie's and Shafer's warrantless entries were permitted as "protective sweeps."[3]  We hold that both warrantless entries were not permitted under the protective sweep exception because Staie and Shafer lacked reasonable suspicion that Heyward's apartment could harbor an individual posing a threat to those on the scene.

"As a general rule, 'searches and seizures inside a home without a warrant are presumptively unreasonable.'"  *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).  However, "[a]n exception to the warrant requirement for a search of premises is the 'protective sweep.'"  *Williams v. Commonwealth*, 49 Va. App. 439, 448 (2007) (en banc).  "[T]he standard for reviewing the protective sweep exception is one of 'reasonable suspicion.'"  *Id.* at 450 (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)).  "A protective sweep is reasonable if 'reasonably articulable facts' exist to show that the area searched 'could harbor an individual posing a threat to those on the scene.'"  *Id.* (quoting *United States v. Lawlor*, 406 F.3d 37, 41 (1st Cir. 2005)).  "[T]here must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Buie*, 494 U.S. at 334.

Here, the protective sweep exception does not apply to either Staie's or Shafer's warrantless entries into Heyward's apartment.  Before entering the apartment, both Staie and Shafer knew that Heyward had left the apartment.  Both also said that they didn't see any

---

[3] The circuit court found that exigent circumstances did not justify the officers' entries. The Commonwealth does not challenge this finding on appeal, and thus we will not disturb it. *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 422 (2012) ("[W]e do not examine the underlying merits of the alternative holding—for that is the very thing being waived by the appellant as a result of his failure to [assign error to it] on appeal." (quoting *Johnson v. Commonwealth*, 45 Va. App. 113, 117 (2005))).

indication that someone was inside the apartment, nor did they hear anything from inside the apartment. Thus, they did not have reasonable suspicion that the area "could harbor an individual posing a threat to those on the scene." Further, both Staie and Shafer stated that part of their purposes in entering was to confirm what Lasley and Mullins had seen and to preserve evidence. These are not permissible purposes for police to enter a home without a warrant. Thus, no exception to the warrant requirement applied to Staie's and Shafer's warrantless entries and such entries were unlawful. We now turn to the validity of the later-executed search warrant and whether the fruits of this warrant must be suppressed.

<u>*Franks* Motion</u>

Heyward argues that under *Franks*, the search warrant for his apartment is invalid because police recklessly omitted the fact that they twice made warrantless entries into his apartment. He argues that, after setting aside any information obtained because of the warrantless entries, the warrant does not establish probable cause and was thus invalid. Thus, any evidence seized under the warrant is fruit of the poisonous tree and should have been suppressed. We disagree that Heyward has established a *Franks* violation because he failed to make a preliminary showing sufficient to warrant a *Franks* hearing.

To be entitled to a *Franks* hearing, a defendant must first "make[] a substantial preliminary showing that the affidavit for the search warrant contains deliberately false or recklessly false misstatements or omissions *necessary to a finding of probable cause*." *Barnes v. Commonwealth*, 279 Va. 22, 33 (2010) (emphasis added). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (quoting *Franks*, 438 U.S. at 171-72). It is

only after a defendant has made such a showing that a defendant is entitled to "an evidentiary hearing on the affidavit's integrity." *Id*.

Inherent in the *Franks* analysis is the fruit of the poisonous tree analysis. "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). The more appropriate question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488 (quoting Maguire, Evidence of Guilt, 221 (1959)).

Here, Heyward failed to make a preliminary showing that the police had a design to deceive the magistrate or reckless disregard for the truth in the police's omission of information and that such omissions were necessary to a finding of probable cause.

The warrant affidavit contains five paragraphs of "material facts constituting probable cause." The circuit court found that the second paragraph contained tainted information and should be set aside. Neither party challenges that finding on appeal, so we will not disturb it. *Fox v. Fox*, 61 Va. App. 185, 203 (2012) (citing *Hillcrest Manor Nursing Home v. Underwood*, 35 Va. App. 31, 39 n.4 (2001) ("declining to consider an issue on appeal because it was not 'expressly stated' in the questions presented (now assignments of error)"). Heyward argues that the first paragraph of the affidavit, relating the observations Lasley and Mullins shared with Detective Shafer and Officer Staie, was "tainted" by observations from each officer's warrantless search, making it impossible to know whether the information in the affidavit's first paragraph came from Lasley and Mullins, or from Detective Shafer's or Officer Staie's own search. Heyward claims that "[b]ecause the observations derived from Staie and Shafer were so intertwined with those of Lasley and Mullins, Shafer's omission misled the magistrate and

negated the very basis upon which he or she found probable cause." Heyward also contends that the affidavit's "inclusion of Staie's observations . . . further misled the magistrate into believing there was probable cause."

Heyward's argument is without merit. Heyward points to no specific evidence to demonstrate this "taint," or even to show that the observations the officers made during the warrantless search were the same as Lasley's and Mullins's. Instead, Heyward relies on unspecific generalizations and suggestion. But to prevail in a *Franks* context, Heyward must have made a preliminary showing "accompanied by a detailed offer of proof." *Barnes*, 279 Va. at 32 (quoting *Colkley*, 899 F.2d at 300). As we said in *Williams v. Commonwealth*, 26 Va. App. 612 (1998), a movant must direct the court to the place in the affidavit containing "omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*[] the magistrate." *Id.* at 618 (quoting *Colkley*, 899 F.2d at 300). Heyward did not do so before the circuit court and has not done so here.

In fact, the information included in the first paragraph of Shafer's affidavit, which was based on his conversation with Lasley and Mullins, substantially aligned with Lasley's and Mullins's *own* testimony. The affidavit states how, upon entering the apartment, Mullins and Lasley "observed marijuana and a lot of money on the table at the top of stairs." It also notes that Mullins snapped photographs of the money, which he later showed to Shafer. The affidavit states that Mullins and Lasley witnessed Heyward leave the residence and that, as he did so, he "took off the license plate [on a truck], and placed it on a vehicle that Heyward left in."

The affidavit also included other information collected by Shafer, wholly unrelated to his warrantless search of Heyward's residence. The affidavit explained that Shafer called Heyward after exiting Heyward's residence and that, during the call, Heyward confirmed Lasley's and Mullins's presence in his residence. Heyward also indicated that he was smoking marijuana

when he confronted Lasley and Mullins in his residence and claimed that the money they saw "was for Father's Day weekend and that he was on his way to South Carolina on vacation."

Just because Lasley and Mullins relayed their observations to Shafer after the illegal entries into the apartment does not mean that the information from Lasley and Mullins was fruit of the poisonous tree. The information in the first paragraph did not come to light but for the illegal entries—it was already in the police's possession before the warrantless entries. Thus, the information was not fruit of the poisonous tree. The information in the third paragraph is also not fruit of the poisonous tree because any information Shafer obtained during the warrantless entry was not exploited to obtain the information in the third paragraph Heyward relayed to Shafer over the phone. The information in both paragraphs was properly included in the warrant affidavit.

Excluding from the affidavit Staie's observations—of "4-5 small bags of green leafy substance," a money counter, and the "odor of marijuana"—there is still sufficient evidence in the affidavit to support a finding of probable cause. *Colkley*, 899 F.2d at 300. *See Boyd v. Commonwealth*, 12 Va. App. 179, 185 (1991) ("The probable cause inquiry conducted by the magistrate entails 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))); *see also Harvey v. Commonwealth*, 76 Va. App. 436, 462 (2023) ("Although an appellate court reviews the application of legal principles such as probable cause *de novo*, the court must 'grant "great deference" to the magistrate's finding of probable cause' when a search warrant is involved." (quoting *Hicks v. Commonwealth*, 281 Va. 353, 360 (2011))). Because Heyward has not offered any evidence "that established either a design to deceive the magistrate or recklessness in [Shafer's] omission of 'material' information from the affidavit"—information

- 10 -

necessary to a finding of probable cause, we uphold the denial of Heyward's *Franks* motion.[4]

*Williams*, 26 Va. App. at 618; *cf. id.* at 616-18 (holding that the defendant had not established a design to deceive the magistrate or recklessness in the omission of material information when the warrant affidavit omitted the fact that some of the information was obtained through an unconstitutional search).

CONCLUSION

The two warrantless entries by police into Heyward's apartment were unlawful. However, we uphold the validity of the warrant because Heyward also has not made the preliminary showing for a *Franks* hearing, as he has not shown that police had a design to deceive or recklessness in their omission of material information. Thus, the evidence seized under the search warrant was properly admitted and the circuit court did not err in denying Heyward's motions to suppress. Accordingly, we uphold Heyward's convictions.

*Affirmed.*

---

[4] Because we hold that the warrant was untainted and therefore valid and that the subsequent search was conducted pursuant to a valid warrant, we need not reach the merits of Heyward's second assignment of error regarding the trial court's ruling based on the doctrine of inevitable discovery. Under the inevitable discovery doctrine, "evidence obtained by unlawful means is admissible if that evidence or information 'ultimately or inevitably would have been discovered by lawful means.'" *Carlson v. Commonwealth*, 69 Va. App. 749, 763 (2019) (quoting *Commonwealth v. Jones*, 267 Va. 532, 536 (2004)). "To establish this, the Commonwealth must show '(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct' and '(2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct.'" *Id.*